# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Adolfo Gutierrez Avila, Jr.,

     Plaintiff,

v.

Paul Schnell, Vicki Janssen, Jeanette
Wilson, Jessica Olson, and Tina Sneen,
being sued in their individual capacities,

     Defendants.

Case No. 22-cv-3180 (NEB/DLM)

**ORDER AND REPORT
AND RECOMMENDATION**

This matter is before the Court on Defendants' Motion to Dismiss pro se Plaintiff Adolfo Gutierrez Avila, Jr.'s First Amended Complaint, Mr. Avila's *de facto* motion to further amend his complaint, and Mr. Avila's renewed Motion to Appoint Counsel. (Docs. 115, 117 (Motion to Dismiss & Memorandum in Support), 133–34 (Second Amended Complaint[1] & Memorandum in Support), 145, 147 (Motion to Appoint Counsel & Memorandum in Support).)

Mr. Avila, an inmate in Minnesota state prison, asserts each of the named defendants violated his Eighth Amendment rights in establishing and instituting a COVID-19 mitigation strategy that caused him to become infected with the virus in November of 2020,

---

[1] On Mr. Avila's docket, this document is entitled Amended Complaint. (Doc. 133.) In fact, it is his Second Amended Complaint, having already amended once as a matter of course. (*See* Doc. 140 (directing Clerk's Office to file Mr. Avila's first amended complaint), Doc. 141 (First Amended Complaint).) For reasons identified in the Court's August 15, 2023 Text-Only Order (Doc. 140), the ordering of these documents on the docket may cause some confusion.

and again about 18 months later. (Doc. 141 at 7, 14.) According to his First Amended Complaint, Mr. Avila seeks relief on behalf 44 similarly-situated inmates as well. (Docs. 141 at 1, 143 (denying Plaintiff's motion for class certification without prejudice).)

Defendants moved to dismiss Mr. Avila's First Amended Complaint because (1) he failed to allege personal involvement of any individual defendant sufficient to establish liability; (2) the COVID-19 mitigation strategies that Mr. Avila attacks were not unconstitutionally deficient; and (3) each of the defendants would be entitled to qualified immunity. (Doc. 117.) Mr. Avila responded to Defendants' motion directly (Doc. 125), and also by seeking to amend his complaint again (Docs. 133 (Second Amended Complaint), 134 (Memorandum in Support)). Defendants oppose the Court's consideration of Mr. Avila's Second Amended Complaint due to technical and procedural deficiencies, and also based on futility, asserting that Mr. Avila's proposed amendments would not revive his claims. (Doc. 142.)

For the reasons stated below, the Court recommends denying Mr. Avila's motion to amend his complaint based on futility, as the Second Amended Complaint fails to state a claim. The Court further recommends granting Defendants' motion to dismiss Mr. Avila's First Amended Complaint, which contains fewer relevant factual allegations than his Second Amended Complaint. Finally, the Court recommends denying Mr. Avila's renewed motion to appoint counsel.

## BACKGROUND

### *Procedural Matters*

Mr. Avila filed this prisoner civil rights action under 42 U.S.C. § 1983 on December 27, 2022, alleging that five Minnesota Department of Corrections ("DOC") prison officials violated his Eighth Amendment right to be free from cruel and unusual punishment while imprisoned. (Doc. 1 at 7.) He moved to amend his complaint on July 5, 2023, contemporaneously filing his First Amended Complaint and several affidavits and exhibits. (Docs. 34 (Motion), 34-1 (First Amended Complaint), 39-111 (Affidavits and Exhibits).) Because Mr. Avila was entitled to amend his complaint as a matter of course, *see* Fed. R. Civ. P. 15(a)(1), the Court denied Mr. Avila's motion to amend as moot, and ordered him to file a clean copy of his First Amended Complaint. (Doc. 124.) Meanwhile, Defendants moved to dismiss Mr. Avila's First Amended Complaint. (Doc. 115.)

Mr. Avila did not file a clean copy of the First Amended Complaint in response to the Court's order. Rather, he filed a Second Amended Complaint, together with a memorandum in support of the Second Amended Complaint. (Docs. 133 (Second Amended Complaint), 134 (Memorandum in Support).) Given Mr. Avila's failure to file a clean First Amended Complaint, the Court directed the Clerk's Office to file the previously-submitted First Amended Complaint (found at Doc. 34-1) as a new docket entry. (Doc. 140.) Subsequently, Defendants filed a memorandum opposing Mr. Avila's motion to amend his complaint (Doc. 142), and Mr. Avila renewed his motion to appoint counsel (Doc. 145).

*Substantive Background – The First Amended Complaint*[2]

Mr. Avila's case concerns the COVID-19 pandemic's effect on Minnesota prisoners. Mr. Avila is an inmate who, during the operative period of the complaint, was at the Minnesota Correctional Facility at Rush City ("MCF-Rush City"). (Doc. 141 at 7, 14.) Each of the defendants works for or with the Minnesota Department of Corrections ("DOC"): Paul Schnell is the DOC commissioner; Vicki Janssen is the Warden of MCF-Rush City; Jeanette Wilson is the Health Services Administrator for MCF-Rush City; Jessica Olson is the registered nurse ("RN") Supervisor for MCF-Rush City; and Tina Sneed is listed as "C.O. Health Services" for MCF-Rush City (collectively "the DOC Defendants"). (*Id.* at 6.) Mr. Avila alleges that during the COVID-19 pandemic, the DOC Defendants acted with deliberate indifference to his health and safety by their practice "of intentionally, incorrectly applying quarantine measures to Minnesota inmates (Avila) so to overcome the covid-19 outbreaks faster." (*Id.* at 7.) Mr. Avila contends that because of the DOC Defendants' actions, he was exposed to and infected with the COVID-19 virus on November 13, 2020. (*Id.*)

More specifically, Mr. Avila alleges the following facts. On November 5, 2020, Mr. Avila's cellmate tested positive for COVID-19. (*Id.* at 8.) Mr. Avila tested negative. (*Id.*) Mr. Avila's cellmate was not separated from him. (*Id.* at 8, 13.) Rather, Mr. Avila and his infected cellmate were locked "[i]n their 8 ft. by 12 ft. two men cell for at least 10 days 23

---

[2] Defendants recognize that since this matter comes before the Court on a motion to dismiss, all factual matters in Mr. Avila's complaint are accepted as true. (Doc. 117 at 2 n.1.)

4

hours a day." (*Id.* at 8.) Mr. Avila sent a kite (that is, written correspondence with staff) to health services on November 14, 2020, complaining that he was not being separated from his sick cellmate. (*Id.*) On November 19, 2020, Mr. Avila was informed he had tested positive for COVID-19. (*Id.*) According to Mr. Avila, his infection was the product of DOC's pattern of "intentional compelled exposure," with no use of single cells. (*Id.* at 16.) Mr. Avila avers that he became infected with the COVID-19 virus again 18 months after his first infection, which he also attributes to DOC's failed COVID-19 mitigation measures. (*Id.* at 10, 14, 16.)

Mr. Avila alleges that each of the DOC Defendants treated him (and all Minnesota inmates) with deliberate indifference to their safety. (*Id.* at 7.) He claims that Paul Schnell "created a policy or custom under which unconstitutional practices occurred and allowed the continuance of such a policy or custom." (*Id.* at 10.) According to Mr. Avila, Commissioner Schnell had the power and duty to protect inmates under his custody and care and failed in that duty "during the unprecedented COVID-19 virus global pandemic." (*Id.* at 11.) Mr. Avila asserts that Commissioner Schnell knew of the infection risks of COVID-19, and knew that social distancing was the most effective mitigation strategy, yet refused to implement that strategy in Minnesota prisons. (*Id.* at 12–13.) Instead of practicing social distancing, COVID-19 infected inmates were not removed from their units and not separated from their cellmates, even if the cellmate tested negative. (*Id.* at 13.)

As for Warden Vicki Janssen, Mr. Avila states that she failed to adopt, implement, or enforce mitigating measures such as social distancing to protect inmates at MCF-Rush

City. (*Id.* at 6, 14.) Mr. Avila accuses Warden Janssen of failing to "respond to evidence of misconduct by subordinates on the Isolation policy," leading him to become infected with COVID-19 twice while housed at MCF-Rush City. (*Id.*)

As for Defendants Jeanette Wilson, Jessica Olson, and Tina Sneen, Mr. Avila contends that each of them failed to "adopt, follow, [and] implement the D.O.C. Isolation policy based on the CDC guidelines for prisons." (*Id.* at 15.) More specifically, Mr. Avila states that these individuals were in MCF-Rush City's health services "chain of command" and were responsible for making decisions about, and safeguarding, inmate health. (*Id.*) Mr. Avila sent kites to Ms. Wilson, Ms. Olson, and Ms. Sneen regarding his COVID-19 concerns in November and December of 2020, but received no response. (*Id.* at 4, 9, 15; *see also* Doc. 1-2 at 4, 7–10.[3])

***Substantive Background – The Second Amended Complaint***

Although Mr. Avila filed a Second Amended Complaint (Doc. 133) and a Memorandum in Support of that complaint (Doc. 134), he did not include a marked-up version of the amended complaint. That is important, not just because it is required by this Court's rules, *see* D. Minn. LR 15.1(b), but because without a redlined version of Mr. Avila's proposed Second Amended Complaint, it is exceedingly difficult to determine what he has changed from his First Amended Complaint. (*Compare generally* Doc. 141 (First

---

[3] Mr. Avila attached a number of Exhibits to his original complaint, *see* Doc. 1-1 (Exhibit List), but then failed to include them with his First or Second Amended Complaints. Although incorporation by reference is not preferred, given the limitations inherent in Mr. Avila's pro se, incarcerated status (as well as Defendants' reference to these exhibits, *see, e.g.*, Doc. 117 at 2), the Court will consider them.

Amended Complaint) *with* Doc. 133 (Second Amended Complaint).) That is particularly true because, while Mr. Avila's Second Amended Complaint bears many similarities to his First Amended Complaint, there are differences, too, which are not readily apparent from simply comparing the two documents.

Most notably, Mr. Avila asserts in the Second Amended Complaint that Commissioner Schnell is personally liable by virtue of his "direct order [for prisons] to implement 'stay with unit' plans." (Doc. 133 at 6.) According to Mr. Avila, this resulted in "trapping inmates (like mice in a box) to one unit," which did not provide space for social distancing. (*Id.*) Mr. Avila also faults Commissioner Schnell for not separating COVID-positive inmates from COVID-negative ones, and not providing single cells for inmates. (*Id.*) Mr. Avila claims that Commissioner Schnell was aware of the distinctive risks COVID presented to prisons, but disregarded those risks in implementing the DOC's mitigation plan. (*Id.* at 7.)

As for Warden Janssen, Mr. Avila mostly repeats in the Second Amended Complaint allegations made in his First Amended Complaint. (*Compare* Doc. 141 at 14 *with* Doc. 133 at 12.) Mr. Avila additionally claims that Warden Janssen helped to "implement" Commissioner Schnell's "stay with unit" plan. (Doc. 133 at 12.)

With respect to Defendants Jeanette Wilson, Jessica Olson, and Tina Sneed, Mr. Avila again repeats allegations made in his First Amended Complaint. (*Compare* Doc. 141 at 15 *with* Doc. 133 at 13.) He further asserts in his Second Amended Complaint that each of these defendants should have been more attuned to his personal vulnerabilities as it

relates to COVID-19 because they were aware of his pre-existing medical conditions. (Doc. 133 at 13.)

Finally, in his Second Amended Complaint, Mr. Avila clarifies that his second COVID-19 infection occurred "around February 3, 2022" at MCF-Rush City, and was also attributable to Commissioner Schnell's "stay with unit" plan. (*Id.* at 11.) Mr. Avila also informs that he is now incarcerated at the Minnesota Correctional Facility in Faribault, Minnesota ("MCF-Faribault"), and asserts that there is (or more accurately, was, at the time of filing) a COVID-19 outbreak at MCF-Faribault which he blames on the same "stay with unit" plan that has been in place since 2020. (*Id.* at 3, 8.) Mr. Avila does not, however, suggest that he has been infected with COVID-19 as a part of this MCF-Faribault outbreak.

## ANALYSIS

Defendants advance three arguments in support of their motion to dismiss Mr. Avila's First Amended Complaint: (1) that Mr. Avila did not allege sufficient personal involvement against any individual defendant to support his claims; (2) that Mr. Avila's assertions of failed COVID-19 mitigation efforts do not state a cognizable Eighth Amendment claim; and (3) that even if Mr. Avila's pleading states claims against one or more defendant, all defendants are entitled to qualified immunity. (Doc. 117.)

Defendants also oppose Mr. Avila's attempt to file his Second Amended Complaint. They argue that Mr. Avila's quick-twitch amendments to make minor changes "needlessly complicat[e] this Court's docket and the progression of this litigation." (Doc. 142 at 6.) They also assert that Mr. Avila's proposed amendments do not cure the deficiencies

identified in Defendants' motion-to-dismiss pleadings, such that any amendment would be futile.

## I.    The viability of Mr. Avila's Second Amended Complaint.

After Defendants moved to dismiss Mr. Avila's First Amended Complaint, he filed his Second Amended Complaint. (Doc. 133.) "Eighth Circuit precedent instructs that courts should not decide a party's motion to dismiss without also considering the opposing party's pending motion to amend the pleadings." *Hazley v. Roy*, No. 16-cv-3935 (SRN/TNL), 2018 WL 1399309, at *5 (D. Minn. Mar. 20, 2018); *Amen El v. Schnell*, No. 20-cv-1327 (DSD/ECW), 2022 WL 1110981, at *5–20 (D. Minn. Jan. 31, 2022) (deciding viability of inmate's motion to amend COVID-19 civil rights complaint before ruling on defendants' motion to dismiss), *R. & R. adopted,* 2022 WL 766402 (D. Minn. Mar. 14, 2022), *aff'd*, No. 22-2115, 2022 WL 17228817 (8th Cir. July 29, 2022). Because Mr. Avila's proposed Second Amended Complaint contains more information than his First Amended Complaint, efficiency dictates that the Court should start by determining the viability of Mr. Avila's Second Amended Complaint.

## A.    Mr. Avila's procedural deficiencies.

Defendants argue in the first instance that Mr. Avila's Second Amended Complaint should be rejected because his amendments have been "piecemeal and repetitive," and because he failed to comply with Local Rule 15.1's requirement that proposed amendments be highlighted through redlined submissions. (Doc. 142 at 6–7.) No doubt, Mr. Avila's noncompliance with D. Minn. LR 15.1(b) has made this Court's task more difficult, and likely forced Defendants to try to hunt for differences between the operative First Amended

Complaint and Mr. Avila's proposed Second Amended Complaint. And it is true that Mr. Avila's Second Amended Complaint appears to add some information that he could have included sooner. But Mr. Avila is a pro se prisoner-litigant—a position that comes with some challenges. His pleadings are to be construed liberally, not just in terms of what the pleadings themselves say, but also in *how* those pleadings are presented. *Accord Hazley*, 2018 WL 1399309, at *5 (finding no error in magistrate judge's decision to broadly construe filings by "cobbling together" allegations from several pleadings); *Popoalii v. Correctional Med. Servs.*, 512 F.3d 488, 497 (8th Cir. 2008) ("A court abuses its discretion when it denies a motion to amend a complaint unless there exists undue delay, bad faith, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the non-moving party, or futility of the amendment."). Mr. Avila's technical shortcomings are not so dramatic as to support denying his motion to amend on this basis.

**B.    Futility.**

Defendants' primary argument in opposing Mr. Avila's Second Amended Complaint is that his amendments are futile. According to Defendants, the "information added to the proposed second amended complaint does not overcome the deficiencies in [Mr. Avila's] previous complaints." (Doc. 142 at 8.)

While leave to amend should generally be freely given, Fed. R. Civ. P. 15(a), a court may properly deny a motion to amend where the amendment would be futile. *Popoalii*, 512 F.3d at 497. Where a party opposes amending a complaint based on futility, "the Court must determine whether the proposed claims state a claim for relief." *Amen El*, 2022 WL 1110981, at *6. As such, although framed in terms of amendment, in actuality, a court

10

faced with a futility argument applies the same standard it does when considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Id.*; *see also Zutz v. Nelson*, 601 F.3d 842, 850–51 (8th Cir. 2010). Here, Defendants' opposition to Mr. Avila's proposed Second Amended Complaint is based on the same arguments raised in seeking dismissal of the First Amended Complaint: (1) that Mr. Avila has not alleged sufficient personal involvement of any defendant to support a liability finding; (2) that he makes no cognizable Eighth Amendment claim; and (3) that qualified immunity insulates each defendant from liability. The Court addresses each argument in turn.

## 1.    Personal Involvement.

To sustain § 1983 claims against public officials in their individual capacities, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Reynolds v. Dormire*, 636 F.3d 976, 979 (8th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)). "In requiring a plaintiff to allege that each defendant was personally involved in the deprivation of his constitutional rights, we assess each defendant relative to [their] authority over the claimed constitutional violation." *Jackson v. Nixon*, 747 F.3d 537, 543 (8th Cir. 2014).

**Commissioner Schnell**

According to Mr. Avila, Defendant Paul Schnell, as DOC Commissioner, created and maintained a "stay with unit" policy that was an constitutionally inadequate response to the COVID-19 pandemic. Mr. Avila does not allege that Commissioner Schnell was directly involved in any aspect of Mr. Avila's two COVID-19 infections, other than by maintaining a policy that which Mr. Avila says is to blame for those infections. Defendant

11

asserts that in the absence of any allegation of Commissioner Schell's direct involvement, his general supervisory authority over Minnesota prisons cannot be a basis for liability.

Defendant is correct, but that does not end the matter. "Even if a supervisor is not involved in day-to-day operations, his personal involvement may be found if he is involved in 'creating, applying, or interpreting a policy' that gives rise to unconstitutional conditions." *Jackson*, 747 F.3d at 543 (quoting *Bonner v. Outlaw*, 552 F.3d 673, 679 (8th Cir. 2009)). That Commissioner Schnell may have had general supervisory authority over Minnesota prisons is not what is important; the question is whether Mr. Avila *pled more* than this, since "an allegation that the DOC director authorized an unconstitutional policy may be sufficient to state a claim for actions taken directly by the director." *Jackson*, 747 F.3d at 544 (internal quotation and citation omitted).

Mr. Avila's Second Amended Complaint is sufficient—as a matter of pleading—to demonstrate Commissioner Schnell's involvement in the alleged unconstitutional conduct. Mr. Avila asserts that Commissioner Schnell was the architect of the "stay with unit" order that required Minnesota prisoners to remain in their units even when infected with COVID-19, resulting in enhanced contagion. (Doc. 133 at 6-7, 10-11.) Broadly construing the Second Amended Complaint (as the Court must, given Mr. Avila's pro se status), Commissioner Schnell's policies were also responsible for Mr. Avila being forced to bunk with his COVID-19 positive roommate in their cell. (*Id.* at 6, 10.)

Mr. Avila's prison was under "the control and supervision" of the Commissioner, who bore responsibility for prescribing the conditions of inmates' confinement. Minn. Stat. § 241.01, subds. 1, 3a(b). Crediting Mr. Avila's allegations, Commissioner Schnell created

and maintained policies consistent with his statutory powers, but which violated Mr. Avila's constitutional rights. Mr. Avila does not seek to impose liability based on the Commissioner's mere supervisory authority, but rather due to imposing prison-wide policies that were unconstitutional. As a matter of pleading, that is sufficient to establish the type of personal involvement required to maintain an action against any particular defendant.

**Warden Janssen**

Mr. Avila alleges that MCF-Rush City Warden Janssen is liable under § 1983 by virtue of "helping implement Paul Schnell's directive to 'stay with unit' plans." (Doc. 133 at 12.) Mr. Avila asserts that Warden Janssen knew that inmates were at risk, but did not "rebel[] against" the Commissioner's "stay with unit" directives. (*Id.*) Mr. Avila does not allege that Warden Janssen she was responsible for creating any DOC policy at issue here, that she deviated from any DOC policy directives, or that she had any direct involvement in his two COVID-19 infections.

A warden "might be liable if the warden had made policy decisions resulting in the alleged unconstitutional conditions." *Ouzts v. Cummins*, 825 F.2d 1276, 1277 (8th Cir. 1987). But Mr. Avila appears to plead just the opposite: that Warden Janssen made *no* policy decision, and merely followed the Commissioner's directives. Absent some other indication of personal involvement or failure to supervise offending employees, this is insufficient to sustain a § 1983 claim against Warden Janssen.

**Jeanette Wilson, Jessica Olson, and Tina Sneen**

According to Mr. Avila, Defendants Jeanette Wilson, Jessica Olson, and Tina Sneen are health services administrators at MCF-Rush City, and were all aware of Mr. Avila's preexisting medical conditions. (Doc. 133 at 13.) Mr. Avila was informed by corrections personnel that these defendants were responsible for making "isolation decisions." (*Id.*) When Mr. Avila was not separated from his COVID-19 positive cellmate, he wrote kites to each of these defendants. (*Id.*) None of these defendants timely responded to Mr. Avila's kites by moving him to a safer location. (*Id.* at 3, 11, 13–14.) Mr. Avila subsequently became infected with COVID-19. (*Id.* at 11–13.) This scenario, according to Mr. Avila, played out the same way twice—in November of 2020, then again in February of 2022. (*Id.*)

Crediting Mr. Avila's allegations—as the Court must at this stage in the proceedings—he has alleged enough personal involvement of each of these defendants to sustain a § 1983 claim. By Mr. Avila's assertions, all three defendants were responsible for decisionmaking regarding inmate isolation during the COVID-19 pandemic; all three were aware that Mr. Avila was housed with a COVID-19 positive cellmate in close quarters; none of the three took corrective action; and Mr. Avila was subsequently infected with COVID-19. Because these defendants were "directly responsible for the conditions and at least some of the actions" giving rise to Mr. Avila's claims, he has alleged sufficient personal involvement. *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990).

2.    **Eighth Amendment.**

Defendants assert that even if Mr. Avila has sufficiently alleged direct and personal involvement, he cannot sustain his claims because he has not established any cognizable Eighth Amendment violation. It is well settled that the Eighth Amendment protects prisoners from inhumane treatment. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). However, the Court agrees with Defendants that it is not entirely clear what precise theory animates Mr. Avila's claims, since he invokes terms used for failure to protect claims, as well as deliberate indifference to medical needs claims.

There are similarities to each theory. A failure to protect theory is rooted in prison officials' constitutional obligation to "take reasonable measures to guarantee the safety of the inmates." *Id.* at 832 (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984)). To sustain a claim based on failure to protect, "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Id.* at 834. A medical-needs claim is similar, requiring a showing that the plaintiff suffered from an objectively serious medical condition. *Fourte v. Faulkner Cty.*, 746 F.3d 384, 387 (8th Cir. 2014).

But both a failure to protect and a medical needs claim require more than just an objectively serious risk or condition. Rather, for such claims, "the Constitutional question is whether Defendants acted with 'deliberate indifference.'" *Saylor v. Nebraska*, 812 F.3d 637, 643–44 (8th Cir. 2016) (quoting *Wilson v. Seiter*, 501 U.S. 294, 303 (1991) (cleaned up)). Although "deliberate indifference" in common nomenclature may seem a passive phrase, similar to apathy, in Eighth Amendment parlance it means more: "deliberate indifference" is "akin to criminal recklessness." *Saylor*, 812 F.3d at 644 (quoting *Jackson*

*v. Buckman*, 756 F.3d 1060, 1065 (8th Cir. 2014) (in turn quoting *Scott v. Benson*, 742 F.3d 335, 340 (8th Cir. 2014))); *see also See Amen El*, 2022 WL 1110981, at * 11–12 (recognizing Eighth Amendment plaintiff must demonstrate that the defendant had a "culpable state of mind," in that they were aware of the risk of harm and deliberately indifferent to it) (quoting *Hines v. Smith*, No. 16-cv-3797 (DSD/SER), 2018 WL 7050674, *4 (D. Minn. Dec. 20, 2018)), *R. & R. adopted*, 2019 WL 234778 (D. Minn. Jan. 16, 2019).

Consistent with other courts in this district, this Court believes that COVID-19 poses an objectively-serious medical risk. *Amen El*, 2022 WL 1110981, at *12; *see also Mohammed S. v. Tritten*, No. 20-cv-793 (NEB/ECW), 2020 WL 2750836, at *22 (D. Minn. Apr. 28, 2020) *R. & R. adopted*, 2020 WL 2750109 (D. Minn. May 27, 2020). The question, then, is whether Mr. Avila has alleged facts from which a court could find that Defendants knew of and disregarded an objective risk with a reckless state of mind.

As Defendants correctly note, a number of courts in this District have "declined to find deliberate indifference to medical needs in cases involving prison COVID-19 protocols." (Doc. 142 at 15 (quoting *McCollum v. Titus*, No. 21-cv-1774 (NEB/JFD), 2023 WL 3822544, at *5 (D. Minn. May 3, 2023), *R. & R. accepted*, 2023 WL 3821566 (D. Minn. Jun. 5, 2023)).) That is true, but none of those cases involved the type of forced-close contact and exposure claims raised by Mr. Avila. For instance, in *McCollum*, the plaintiff challenged his prison's COVID-19 mitigation measures, which included ineffective cleaning, poor air quality, limited social distancing, and officers disregarding safety and sanitation protocols. 2023 WL 3822544, at *2. In *Amen El*, the allegations were similar: "mixing" of COVID-19 positive and negative inmates in the same unit (but not the

16

same cell), poor sanitation, lax enforcement of the prison's masking policy, and being forced to move to a cell vacated by a COVID-19 positive inmate 10 days earlier. 2022 WL 1110981, at *14–16. In *Blevins v. Schnell*, No. 20-cv-1194 (NEB/KMM), 2021 WL 5088164, at *1–2 (D. Minn. Sept. 15, 2021), *R. & R. adopted*, 2021 WL 5087550 (D. Minn. Nov. 2, 2021), the inmate-plaintiff complained that he was not given appropriate personal protective equipment, was forced to mingle with other prisoners and visitors who might be sick, and lived in a space that did not allow for social distancing. And in *Frohlich v. United States*, No. 20-cv-2692 (PJS/HB), 2021 WL 2531188, at *3–4 (D. Minn. Jun. 21, 2021), a habeas petitioner sought relief because of similar concerns.

Mr. Avila's claims are different. If he were simply complaining that the DOC Defendants had generally not done enough to prevent the spread of COVID-19, it would be difficult to distinguish his case from those cited above. Here, there is more. Mr. Avila's core allegation does not involve shoddy enforcement, poor sanitation, or a generalized inability to social distance. Rather, he alleges that his constitutional rights were violated by Commissioner Schnell's forced-exposure plan, which resulted in Mr. Avila being placed in a small cell with an inmate who Defendants knew had tested COVID-19 positive.[4] When Mr. Avila sought to be moved through the appropriate channels—those defendants responsible for isolation decisions—his request was ignored. In short order, Mr. Avila himself tested positive for COVID-19. It could well be that Defendants could present

---

[4] In *Frohlich*, the court noted that "confining Frohlich to a 9-by-12-foot cell with a cellmate is not deliberately indifferent." 2021 WL 2531188, at *3. While that is true as a general matter, the calculus changes once the person's cellmate is known to be infected with COVID-19.

evidence that rebuts Mr. Avila's allegations, but at this early stage in the proceedings (and given the Court's obligation to credit Mr. Avila's assertions), Mr. Avila has done enough to demonstrate a viable Eighth Amendment claim related to being forced to share a small cell with a known COVID-19 positive cellmate.

### 3.    Qualified Immunity.

Even if some of Mr. Avila's claims could otherwise proceed, however, qualified immunity shields all defendants from liability. "Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011). "If the law at [the] time was not clearly established, an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to 'know' that the law forbade conduct not previously identified as unlawful." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "Clearly established" means that the legal principle relied on must be settled, and also "clearly prohibit the [official's] conduct in the particular circumstances before him." *D.C. v. Wesby*, 583 U.S. 48, 63 (2018); *see also Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (clearly-established inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition). "This requires a high 'degree of specificity.'" *Wesby*, 583 U.S. at 63 (quoting *Mullenix*, 577 U.S. at 13).

While an inmate's Eighth Amendment right to be free from harm in prison is clearly established, the Court cannot conclude that the specific conduct that Mr. Avila attacks here—being in a cell with a COVID-19 positive cellmate—was so clearly unconstitutional

that "every reasonable official" would know. *Wesby*, 583 U.S. at 590. On the contrary, cases from this district and throughout the country have endorsed prison officials' broad discretion in determining the appropriate COVID-19 mitigation measures. *See, e.g.*, *Harmon v. Harris*, 2023 WL 5499595 (8th Cir. May 15, 2023) (summarily affirming district court's[5] grant of qualified immunity to prison officials faced with allegations of constitutionally inadequate COVID-19 response, including shared housing); *McCollum*, 2023 WL 3822544. In light of this authority, the Court cannot conclude that DOC's double-bunking policy stepped so far outside of Eighth Amendment bounds that any official would understand the policy was unconstitutional. *Accord al-Kidd*, 563 U.S. at 743 ("Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions.") To the extent that Mr. Avila raised cognizable claims against some defendants, those defendants are shielded by qualified immunity.

## II.     Defendants' Motion to Dismiss the First Amended Complaint.

The Court has concluded that amendment of Mr. Avila's Second Amended Complaint would be futile based on qualified immunity. Not surprisingly, his First Amended Complaint fares no better, since it contains sparser allegations. The Court thus recommends granting Defendants' motion to dismiss Mr. Avila's First Amended Complaint.

---

[5] *Harmon v. Harris*, 4:22-cv-0716 (BRW/ERE), 2023 WL 176578 (E.D. Ark. Jan. 10, 2023), *R. & R. adopted*, 2023 WL 1766482 (E.D. Ark. Feb. 3, 2023).

### III.    Mr. Avila's Renewed Motion to Appoint Counsel.

Mr. Avila has renewed his motion to appoint counsel. However, given the Court's recommendation that Mr. Avila's First Amended Complaint be dismissed and his motion to amend the complaint be denied as futile, the Court sees no reasoned basis to appoint counsel at this point. Accordingly, the Court denies Mr. Avila's renewed motion to appoint counsel.

### ORDER

Based on the above, and on all the files, records, and proceedings in this action, **IT IS ORDERED** that:

1) Plaintiff Adolfo Gutierrez Avila, Jr.'s Motion to Appoint Counsel (Doc. 145) is **DENIED**.

### RECOMMENDATION

Additionally, based on the above, and on all the files, records, and proceedings in this action, **IT IS RECOMMENDED** that:

1) Defendants' Motion to Dismiss Mr. Avila's First Amended Complaint (Doc. 115) be **GRANTED**;

2) This action be **DISMISSED WITH PREJUDICE**; and

3) Mr. Avila's motion to further amend that complaint (Docs. 133, 134) be **DENIED**.

Date: January 30, 2024                              *s/Douglas L. Micko*
                                                             DOUGLAS L. MICKO
                                                             United States Magistrate Judge

**NOTICE**

**Filing Objections:** The portion of this document that is a Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed findings and recommendations within 14 days after being served with a copy" of the Report and Recommendation.

A party may respond to those objections within 14 days after being served a copy of the objections. *See* D. Minn. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).